United States Courts
Southern District of Texas
FILED

SEP 10 2019

David J. Bradley, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTINA L. SALAZAR, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| CITY OF HOUSTON, TEXAS | § § § | |
| *Defendant.* | § § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Christina L. Salazar, files this Original Complaint and in support, would show the Court as follows:

#### I. PARTIES AND SERVICE

1. Plaintiff, Christina L. Salazar ("Salazar"), was an employee of the City of Houston Police Department and a resident of the State of Texas.

2. Defendant City of Houston, Texas is a governmental entity. Service of this Complaint may be made on the City of Houston by serving Anna Russell, its City Secretary at 900 Bagby Street, Houston, Texas 77002 under authority of TEXAS CIVIL PRACTICE & REMEDIES CODE § 17.024(b).

#### II. JURISDICTION AND VENUE

3. Venue is proper in the Southern District of Texas, since a substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

1

## III. FACTS

5. Salazar has been employed by the City of Houston since February 27th, 1997. She is currently assigned to the Houston Police Department ("HPD"). Salazar has been a lieutenant with HPD since August 13th, 2013.

6. In early April 2017, Sergeant Ray Pearson filed a frivolous complaint against Salazar with the HPD Internal Affairs Department. In Sergeant Pearson's complaint, he alleged that Salazar had engaged in inappropriate behavior and dressed provocatively. These allegations were false, but nonetheless damaging to Salazar's reputation at HPD.

7. In June of 2017 Salazar filed a response to Sergeant Pearson's complaint in which she addressed the hostile work environment she endured as a result of the sexual harassment from Sergeant Pearson. Salazar's claims against Sergeant Pearson were not addressed by the City during the investigation.

8. This frivolous complaint and the Houston Police Department's failure to address the actions of Sergeant Pearson allowed Salazar's immediate supervisor, Captain Jacob Atkins to physically harass her.

9. Starting on or about September of 2017, Captain Atkins began to subject Salazar to sexual harassment and a hostile work environment. For example, during the Hurricane Harvey deployment, Salazar was standing with Captain Atkins in the hallway across from the radio room next to a stack of bottled water that had been delivered from the Northeast Division. Salazar asked Captain Atkins to feel how warm the water' bottles were and advised him that she did not think the water was safe to hand out to the troops. Later that day he mentioned this scenario to Salazar and

told her that he thought she was bending over asking him to feel her up from behind. Salazar responded, "no, why would anyone say something like that?" and insisted she was not inviting him to do such a thing.

10. In the following weeks, Captain Atkins began calling Salazar into his office for multiple "meetings" a day. In some cases, he would ask to meet Salazar three times a day for two to three hours at a time. Each time Salazar was inside his office he ordered her to close the door which automatically locked. They spent a great deal of time talking about Sergeant Pearson's complaint against Salazar. Captain Atkins claimed to be working diligently on Salazar's behalf to make sure that HPD Legal department and chain of command would know about the holes in the investigation and that the complaint was based on a supervisor's temper tantrum and filled with a "whole lot of nothing."

11. In these closed-door meetings, Captain Atkins would walk from behind his desk to where Salazar was seated and pull her up by her arm to hug her. He would hold on to her and not let go until he felt she was calm or until she managed to convince him that she needed to go to the restroom. Salazar felt forced to participate in these meetings because Captain Atkins out-ranked her and because he constantly advised her that she internalized too much and needed to vent and talk things through to keep her stress and anxiety levels down. These meetings made Salazar feel incredibly uncomfortable.

12. In one instance during a closed-door meeting, Captain Atkins kissed Salazar on the neck. In another instance, Captain Atkins raised the back of her shirt to look at her tattoo. Salazar felt as though she could not speak out against Captain Atkins' inappropriate behavior due to the ongoing investigation of the complaint filed by Sergeant Pearson.

13. On September 12, 2017, Captain Atkins called Salazar on the phone and told her that he would be attending his first officer funeral. Captain Atkins asked Salazar to meet him in his office after the funeral so she could provide him with emotional support.

14. On October 31, 2017, Salazar was informed by Sergeant Pavlu that Captain Atkins ordered him to instruct Officer David White to stop all communications with Salazar. Sergeant Pavlu took this as a directive for the entire unit and advised them to avoid communication with her to appease the Captain Atkins' wishes. Furthermore, Sergeant Giannavola told Salazar that he too was told to not communicate with her regarding administrative matters (which are under her span of control) because Captain Atkins wanted to work "closely" with Salazar on community projects.

15. On November 2, 2017, Captain Atkins stood in the doorway of Salazar's office and refused to leave. He insisted Salazar ride with him in his city vehicle to her doctor's office to complete blood work and pick up a prescription. Salazar declined this invite and stated that she could handle these errands at a later time, but Captain Atkins insisted on escorting her right then and there. Salazar was upset about being forced to leave the office and was very quiet in the car rides between locations. Shortly after leaving the Kelsey Seybold office, Captain Atkins placed his right hand on Salazar's left knee. He asked Salazar if she minded him having his hand on her knee to which she replied that she did not like being touched. To this response, he removed his hand from her knee.

16. On November 6, 2017, in another closed-door meeting which lasted an hour and 40 minutes, Salazar confronted Captain Atkins about how his about his sexual harassment and his inappropriate behavior in these meetings made her uncomfortable. Salazar also raised the issue of Captain Atkins' order that prevented other staff members from communicating with her. Salazar

told Captain Atkins that his behavior made her feel alienated within the division. Salazar stated that if this behavior continued, she would seek a position elsewhere. Captain Atkins assured Salazar that he did not lack confidence in her abilities and that he did want Salazar to leave the division. He also stated that he did not care if the closed-door meetings caused office gossip or made her uncomfortable. Salazar requested to put an end to the closed-door meetings. This is when Captain Atkins began treating Salazar in a hostile manner.

17. On November 8, 2017, Salazar had her husband come to the office so she could introduce him to Captain Atkins in hopes of putting an end to the sexual harassment. Instead, Captain Atkins became upset at the introduction and began acting hostile towards Salazar.

18. On November 29, 2017, Captain Atkins pulled Salazar into a closed-door meeting and informed her that he had heard from three different individuals that she had filed a sexual harassment complaint against him. Salazar responded by stating that if she had filed a complaint of such a magnitude against him, he would have been notified.

19. On December 8, 2017, Captain Atkins pulled Salazar into another closed-door meeting. Salazar recorded the first hour of this two-and-a-half-hour-long meeting but lost the last hour and a half due to lack of storage. During this first hour Salazar can be heard expressing her concern that Captain Atkins has been treating her harshly, chastising her without reason, accusing her of causing him grief, and mistreating her because she did not want a personal relationship with him. Captain Atkins can be heard saying "this is what you wanted", "you wanted to be treated like the other lieutenants", "this is what you asked for". Salazar told him that she did not want to be mistreated. Later in the conversation Captain Atkins says that Salazar no longer need to fear

mistreatment from him because he is "no longer attracted to her in that way". This statement is not captured in the recording but transpired during the conversation.

20. In addition to the aforementioned dates, Captain Atkins has also negatively impacted Salazar's self-esteem and confidence. He advised Salazar and two of her sergeants (Pavlu and Giannavola) that he believed he could not post her administrative sergeant vacancy city wide as a result of her reputation from the complaint filed by Sergeant Pearson. He told Salazar and her sergeants that no one would want to work for her. Captain Atkins also made it well known to Salazar on several occasions that she owed him a great deal for "going to bat for her" during the investigation and held it over her head constantly.

## V. CAUSES OF ACTION

### 1. Sexual Harassment (City of Houston, Texas)

21. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

22. Lieutenant Salazar, a woman and member of a protected class, was a victim of sexual harassment from Captain Atkins.

23. Salazar was subjected to several closed-door meetings with Captain Atkins in which inappropriate physical advances and remarks were made by Captain Atkins.

24. Captain Atkins subjected Lieutenant Salazar to sexual harassment by pressuring her to attend these meetings, making sexually charged remarks, and by making several unwanted physical advances towards her.

25. Salazar has suffered sexual harassment and been subjected to different terms and conditions of employment because of her female gender, including a hostile work environment, in violation of Texas Labor Code § 21.001 *et. seq*.

### 2. Gender Discrimination (City of Houston)

26. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

27. As described above, Salazar has been subjected to discrimination and a hostile work environment based on her gender, in violation of Title VII, 42 U.S.C. § 2000e, et seq.

28. These conditions have resulted in segregation between Salazar and other staff members and have led to violations of Title VII and the Equal Pay Act, 29 U.S.C. § 206(d).

29. Defendant did not make a good faith effort to comply with statutes against discrimination.

30. Defendant knowingly, willfully, or with reckless disregard, carried out its illegal pattern or practice regarding discrimination towards Salazar.

31. Salazar has not been afforded the same terms and conditions of her employment as similarly situated male employees.

32. Defendant allowed, failed to take any action, failed to take remedial action, failed to discipline its employees, and/or failed to take any corrective action, thereby allowing and facilitating the continuance of the discrimination and harassment towards Salazar.

33. As a result of Defendant's actions or inaction in violation of Title VII, Salazar has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, and loss of enjoyment of life in the past, all of which were caused by Defendant's treatment of them.

34. In all probability, Salazar will continue to suffer such damages in the future as a result of the City of Houston's conduct described above.

### 3. Retaliation (City of Houston, Texas)

35. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

36. Salazar was subjected to retaliation when Captain Atkins ordered Sergeants and other staff members within the division to cease communication with her even when that communication involved information or duties directly within the scope of her work.

37. Shortly after introducing Captain Atkins to her husband, Salazar experienced hostile behavior from him which included his constant reminder to her of his support in the investigation of the complaint filed by Sergeant Pearson. Captain Atkins used this as a tactic to deter Salazar from speaking out against his inappropriate behavior towards her.

38. Thus, Salazar has been subjected to different terms and conditions of employment because she opposed unlawful sex discrimination and sexual harassment, in violation of Texas Labor Code § 21.001 *et. seq.*

## V. ATTORNEY'S FEES

39. 47. Plaintiff's incorporates all allegations set forth herein by reference.

40. 48. Plaintiff also seeks reasonable and necessary attorneys' fees and costs incurred by or on behalf of Plaintiff herein.

## VI. CONDITIONS PRECEDENT

1. All conditions precedent have been met, have occurred, or have been waived. Plaintiff received the Notice of Right to Sue letter related to the foregoing claims from the Equal Opportunity Employment Commission on October 1, 2018. This suit was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

## VII. JURY DEMAND

2. Plaintiff demands a jury trial on all triable issues.

## IX. PRAYER

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests that the Court award Plaintiff damages for the emotional distress and mental anguish she suffered as a result of Defendant's conduct, compensatory damages, and all other damages attorneys' fees, costs and expenses to which Plaintiff is entitled under law or equity, as well as pre-judgment and post-judgment interest at the maximum rate allowable by law, and all other relief to which Plaintiff is entitled under law or equity.

Dated: September 9th, 2019

_____
Christina L. Salazar
2949 Hargrave Rd.
Huffman, TX 77336